**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MOHAMMED BAH, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:12-CR-0098-RWS-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:17-CV-3158-RWS-RGV |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Mohammed Bah's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 166], the government's response, [Doc. 170], and Bah's reply, [Doc. 175]. For the reasons that follow, it is **RECOMMENDED** that Bah's § 2255 motion be denied.

## I. PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a twenty-nine count indictment against Bah and co-defendant Elizer Owens ("Owens"), charging Bah in Count One with conspiracy to possess with intent to distribute marijuana and at least 28 grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(ii), 841(b)(1)(C), and 841(b)(1)(D); in Counts Two, Four, Ten, Twelve,

and Twenty-Five through Twenty-Seven with possession with intent to distribute marijuana, in violation of §§ 841(a)(1) and 841(b)(1)(D), and 18 U.S.C. § 2; in Counts Three and Fifteen with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(I) and 2; in Counts Five, Seven, Sixteen, Nineteen, Twenty, Twenty-Three, and Twenty-Nine with possession of a firearm by an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5) and 2; in Count Nine with possession of a stolen firearm, in violation of §§ 922(j), 924(a)(2), and 2; in Counts Eleven and Thirteen with possession with intent to distribute cocaine, in violation of §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; and in Counts Fourteen, Twenty-Two, and Twenty-Four with possession with intent to distribute crack, in violation of §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. [Doc. 1]. After learning that Bah was legally present in the United States, the government filed a motion to dismiss Counts Five, Seven, Sixteen, Nineteen, Twenty, Twenty-Three, and Twenty-Nine, which the Court granted. [Doc. 37]. Represented by court appointed counsel Michael J. Trost ("Trost"), Bah entered a negotiated guilty plea to Counts One and Three. [Docs. 101; 108; 129]. The government agreed to dismiss the remaining counts. [Doc. 108-1 at 5].

The plea agreement included the following provision regarding the immigration consequences of Bah's guilty plea:

> [Bah] recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which [Bah] is pleading guilty. **Indeed, because [Bah] is pleading guilty to this offense, removal is presumptively mandatory.** Removal and other immigration consequences are the subject of a separate proceeding, however, and [Bah] understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. **[Bah] nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.**

[Doc. 108-1 at 4-5] (emphasis added). Bah signed the plea agreement and a separate certification section, which states in relevant part:

> I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them.

[Id. at 16-17].

At the plea hearing, Bah was placed under oath and confirmed that he had reviewed the plea agreement with Trost and signed it. [Doc. 129 at 2-3]. The government outlined the terms of the plea agreement, including the immigration provision, stating as follows:

3

AO 72A
(Rev.8/82)

> . . . [Bah] recognizes that there may be consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law there's a broad range of crimes that are removable offenses, including the offense to which [Bah] is pleading today. He also understands at this time neither the Court nor his attorney can predict what the effect of his conviction will be on his immigration status. [Bah] nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that may result.

[Id. at 9-10]. Bah acknowledged that this was the agreement he had made and signed and that no one had threatened or forced him to plead guilty . [Id. at 13-14].

The government then summarized what the evidence would show if the case went to trial, stating that Bah and Owens "worked together to sell guns and drugs to an undercover officer" and that

> On each occasion the undercover officer went to meet with either . . . Owens or . . . Bah at 1749 Marcell Avenue, . . . in Atlanta Georgia, and at the time that they met - - the undercover officer met with . . . Bah or . . . Owens, they were both together, both defendants discussed the type of drugs, the amount of drugs and the type and price of firearms that were being sold to the undercover.
>
> On each deal either . . . Owens or . . . Bah brought the guns or drugs to the location and then . . . Bah would then conduct the transaction with the undercover officer at the agreed upon price, which at that time the undercover officer gave government funds to . . . Bah for the drugs and/or the guns.
>
> . . . [A]ll of the drugs were tested and found to be controlled substances, in this case marijuana and cocaine base, and that . . . during . . . the drug sales between the defendants and the undercover officer . .

4

> . Owens was armed and he escorted . . . Bah into the stash house location on Marcell Avenue to retrieve the drugs and the guns and then . . . Bah was then escorted by . . . Owens to the car for the exchange.
>
> . . . [D]uring the purchase of the firearms from . . . Bah and . . . Owens, . . . Bah informed the undercover officer on one occasion that he purchased a firearm, that it could possibly have come from the street and that he needed to be careful and not to take the gun to any clubs or any other events that would . . . raise concern about that particular firearm.
>
> . . . [W]hen the drugs were tested . . . the amount of the crack cocaine was at least 28 grams.

[Id. at 16-18]. Bah affirmed that he did not disagree with any of the facts stated by the government. [Id. at 18]. Upon further questioning by the Court, Bah agreed that he and Owen sold the guns and drugs to the undercover agent as described, that the offense involved at least 28 grams of cocaine, and that on at least one of these occasions Owens had a gun. [Id.].

Bah confirmed that he understood that "this conviction can and likely will have an impact on [his] status in this country" and that "it is likely that [he] would be deported from the country." [Id. at 21]. Bah acknowledged that he "had a sufficient chance to talk to . . . Trost about [his] case and to have [Trost] answer any questions that [he] might have before" pleading guilty and was satisfied with Trost's representation. [Id. at 22]. The Court accepted Bah's plea, [id. at 24], and

5

subsequently imposed consecutive 60-month mandatory minimum sentences on each count, for a total sentence of 120 months of imprisonment, [Doc. 130 at 20; Doc. 114].

Bah appealed, and Trost moved to withdraw as counsel and filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). [Doc. 154]. On August 29, 2016, the United States Court of Appeals for the Eleventh Circuit granted Trost's motion and, finding no arguable issues of merit after an independent review of the entire record, affirmed Bah's convictions and sentences. [Id.].

Bah timely filed this pro se § 2255 motion, arguing that Trost was ineffective for failing to advise Bah that his convictions had "mandatory deportation consequences" and that, had Trost correctly advised him regarding those consequences, he would have proceeded to trial and presented an entrapment defense. [Doc. 166 at 4; Doc. 166-1 at 5-12]. The government responds that the record conclusively shows that Trost provided Bah effective assistance and that Bah suffered no prejudice. [Doc. 170 at 3, 16-27]. Bah's reply adds nothing significant to the discussion of the issues presented. [Doc. 175].

## II. DISCUSSION

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United

6

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Id. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

7

at 690. Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted). When the "deportation consequences" of a guilty plea are "truly clear," defense counsel has a duty to so inform his client. Padilla v. Kentucky, 559 U.S. 356, 369 (2010). Bah has the burden of affirmatively proving prejudice. Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000). Additionally,

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

8

In this case, the record conclusively shows that Bah cannot meet his burden to show prejudice. Bah's plea agreement specifically included a section regarding the immigration consequences of his convictions, see [Doc. 108-1 at 4-5], which stated that:

> (1) removal was presumptively mandatory because he was pleading guilty to the offense; (2) he understood that neither his attorney nor the district court could predict the effect of his plea on his immigration status; and (3) he wanted to plead guilty even if it resulted in his automatic removal from the United States.

Levy v. United States, 665 F. App'x 820, 823-24 (11th Cir. 2016) (per curiam). Furthermore, Bah signed an acknowledgment at the end of his plea agreement that he had read the agreement, reviewed every part of it with his attorney, and understood its terms. [Doc. 108-1 at 17]. Plaintiff further confirmed his understanding of the terms of the plea agreement under oath during the plea colloquy. [Doc. 129 at 2-3, 13-14, 21-22]. "Because he stated in a signed plea agreement that he wanted to plead guilty even if the consequence was automatic removal, [Bah] cannot demonstrate he would have refused to plead guilty if counsel had told him he could face automatic removal." Levy, 665 F. App'x at 824.

Bah contends that he suffered prejudice because, by pleading guilty, he forwent the opportunity to present his entrapment defense. [Doc. 166-1 at 9-10]. Specifically,

9

Bah alleges that he changed his number to avoid being contacted by the undercover officer because the officer's questions regarding firearms and drugs made Bah feel uncomfortable but the officer somehow managed to get Bah's new number. [Id. at 3, 14-15]. These self-serving, unsupported allegations are insufficient to show prejudice and are belied by Bah's own statements during his plea colloquy affirming under oath that he and Owens willingly sold drugs and firearms to the undercover officer and that Owens possessed a gun on at least one such occasion. See [Doc. 129 at 16-18]. Bah has simply not met his "heavy burden" to show that the statements he made during his plea colloquy were false. See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam) (holding that self-serving allegations in § 2255 motion were insufficient to rebut the presumption that statements made during plea colloquy were true and correct). Accordingly, Bah is not entitled to relief under § 2255.

## III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability

10

when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Bah's ground for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Bah's § 2255 motion, [Doc. 166], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 30th day of November, 2017.

*[signature: Russell G. Vineyard]*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)